Defendant-appellant Lonny Lee Bristow appeals the August 20, 1998 order of the Crawford County Court of Common Pleas implementing certain restrictions upon his use of the prison mail system.
On June 1, 1998, plaintiff-appellee (and Richland County Prosecuting Attorney) James J. Mayer, Jr. filed a complaint in the Crawford County Common Pleas Court to have appellant declared a "vexatious litigator" pursuant to the provisions of R.C. 2323.52. During the preceding five-year period, appellant had filed numerous lawsuits in different courts directed at various Richland County officials, including appellee. Pursuant to an agreement between the parties, appellant admitted the allegations in the complaint, and was determined by the Crawford County Common Pleas Court to be a vexatious litigator in a judgment entry dated June 1, 1998.
On that same date, appellant was also remanded to the custody of the Department of Rehabilitation and Correction to serve a prison term on other matters. Despite certain prohibitions contained in the judgment entry, appellant apparently used his spare time in prison to send harassing letters, including several to the Sheriff of Richland County. In these letters, appellant stated that he would file "[h]undreds and [h]undreds" of lawsuits against Richland County officials, amongst others. Appellant's letters were brought to the attention of the trial court, and on July 30, 1998 that court issued an order stating that "the Defendant [shall] not have mail privileges at any state institution wherein he may be housed."
On August 20, 1998, "[b]ased upon practical concerns raised by the * * * Department of Rehabilitation and Correction," the trial court issued a new entry purporting to enforce its original vexatious litigator determination and "clarify[ing]" the July 30 order. The trial court's order mandated that "any mail from Lonny Lee Bristow that is addressed to any court other than to [the trial court] shall be forwarded to this Court for a determination as to its disposition." The order reasoned that "[i]n this way, defendant Bristow is assured of mail privileges to file any legal papers in this action or in his criminal matters and is further assured mail privileges to file any legal paper to institute any non-frivolous action upon motion and order of this Court." The court's order made an exception for mail addressed "to any attorney-at-law not listed * * * as a person requesting to not receive mail from Bristow," in order to assure appellant's ability "to access legal counsel or advice should he choose." Finally, the order directed that appellant was forbidden from sending mail "that is addressed to any person Bristow has harassed in the past and who does not want to receive mail from him." The court directed counsel for the plaintiff to forward a list of such persons to the Department of Rehabilitation and Correction.
On September 21, 1998, appellant forwarded a Motion for Leave to Proceed to the Crawford County Common Pleas Court, pursuant to the August 20, 1998 implementation order. In his motion, appellant sought leave to file a civil rights lawsuit in the Common Pleas Court of Richland County. The trial court denied appellant's motion. On November 17, 1998, appellant filed an appeal from the trial court's August 20 implementation order, asserting a single assignment of error:
 THE TRIAL COURT COMMITTED REVERSIBLE AND PREJUDICIAL ERROR BY ITS AUGUST 20, 1998, JUDGMENT ENTRY AS IT DENIES THE APPELLANT ACCESS TO THE COURTS, FREEDOM OF EXPRESSION, THE RIGHT TO PRIVACY, THE RIGHT TO DUE PROCESS, AND THE RIGHT TO PETITION THE GOVERNMENT FOR REDRESS OF GRIEVANCES, IN VIOLATION OF THE OHIO AND UNITED STATES CONSTITUTIONS AND WRITTEN LEGISLATION THAT EXPRESSLY PROHIBITS SAID ORDER.
We will first address appellant's argument that the trial court's order denies his access to the courts and due course of law in violation of the Ohio Constitution. Article I, Section 16
of the Ohio Constitution reads, in pertinent part:
 All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.
Article I, Section 16 protects the right to seek redress in Ohio's courts when one person is injured by another. See generally Central Ohio Transit Authority v. Timson (December 24, 1998), Franklin App. No. 98AP-509, unreported, 1998 WL 894817 at *3, citing Brennaman v. R.M.I. Co. (1994), 70 Ohio St.3d 460, 466. The provision also prohibits impairment or abrogation of a common-law right or action existing at the time the Constitution was adopted without affording a reasonable substitute for the right or action affected. See generally Mominee v. Scherbarth, (1986), 28 Ohio St.3d 270, 291-92 (Douglas, J., concurring). It is the primary duty of courts to sustain the Ohio Constitution's declaration of right and remedy wherever it has been wrongfully invaded. See Kintz v. Harriger (1919), 99 Ohio St. 240, paragraph two of the syllabus, overruled on other grounds by Stephenson v.McCurdy (1931), 124 Ohio St. 117. Moreover, "[w]hen the Constitution speaks of remedy and injury to person, property, or reputation, it requires an opportunity granted at a meaningful time and in a meaningful manner." Hardy v. VerMeulen (1987),32 Ohio St.3d 45, 47.
Here, appellant argues that the procedure established in the August 20, 1998 order is unconstitutional under the foregoing standard. Under the August 20 order, appellant's legal mail is forwarded directly to the Crawford County Court of Common Pleas for review under the standard established by R.C. 2323.52(F).
 A court of common pleas that entered an order under division (D)(1) of this section shall not grant a person found to be a vexatious litigator leave for the institution or continuance of, or the making of an application in, legal proceedings in the court of claims or in a court of common pleas, municipal court, or county court unless the court of common pleas that entered that order is satisfied that the proceedings or application are not an abuse of process of the court in question and that there are reasonable grounds for the proceedings or application. (emphasis added).
The trial court's determination under R.C. 2323.52(F) is not appealable, see R.C. 2323.52(G), and if a person deemed a vexatious litigator proceeds in any legal action without R.C.2323.52(F) approval, that action is to be immediately dismissed. See R.C. 2323.52(I).
The only distinction between the procedure generally contemplated in R.C. 2323.52 and the trial court's implementation order in this case is a factual one. Because R.C. 2323.52(I) requires dismissal of unapproved actions, the statute's scheme clearly contemplates that some vexatious litigators will attempt to proceed without leave. However, because appellant is in prison, the court's order requires appellant's legal mail to be forwarded to the trial court for the R.C. 2323.52(F) determination. He is therefore literally incapable of going forward in any legal proceeding without the trial judge's approval.[1]
R.C. 2323.52 clearly establishes a procedure by which the rights of vexatious litigators to access the courts are restricted; indeed, such restriction is the very goal of the statute. Cf. Central Ohio Transit Authority v. Timson (December 24, 1998), Franklin App. No. 98AP-509 at *4. In turn, the trial court's implementation of the statute in this case, coupled with the express assignment of error raised by appellant clearly require this Court to analyze R.C. 2323.52 itself under Article I, Section 16 of the Ohio Constitution. That provision prohibits the legislature from impairing or abrogating common-law rights and actions existing at the time the Constitution was adopted without affording a reasonable substitute. Here, because the right abrogated obviously impairs appellant's direct access to the courts, a substitute for direct access must be provided "in a meaningful time and in a meaningful manner." Id. at *4. Accordingly, the question ultimately before this Court is whether the procedure described in R.C. 2323.52 provides a reasonable and meaningful substitute for direct access to Ohio's trial courts.[2]
 (A) As used in this section:
 (1) "Conduct" has the same meaning as in section 2323.51 of the Revised Code.
 (2) "Vexatious conduct" means conduct of a party in a civil action that satisfies any of the following: (a) The conduct obviously serves merely to harass or maliciously injure another party to the civil action. (b) The conduct is not warranted under existing law and cannot be supported by a good faith argument for an extension, modification, or reversal of existing law. (c) The conduct is imposed solely for delay.
 (3) "Vexatious litigator" means any person who has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in a civil action or actions, whether in the court of claims or in a court of common pleas, municipal court, or county court, whether the person or another person instituted the civil action or actions, and whether the vexatious conduct was against the same party or against different parties in the civil action or actions. "Vexatious litigator" does not include a person who is authorized to practice law in the courts of this state under the Ohio Supreme Court Rules for the Government of the Bar of Ohio unless that person is representing or has represented self pro se in the civil action or actions.
 (B) A person, the office of the attorney general, or a prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a municipal corporation who has defended against habitual and persistent vexatious conduct in the court of claims or in a court of common pleas, municipal court, or county court may commence a civil action in a court of common pleas with jurisdiction over the person who allegedly engaged in the habitual and persistent vexatious conduct to have that person declared a vexatious litigator. The person, office of the attorney general, prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a municipal corporation may commence this civil action while the civil action or actions in which the habitual and persistent vexatious conduct occurred are still pending or within one year after the termination of the civil action or actions in which the habitual and persistent vexatious conduct occurred.
 (C) A civil action to have a person declared a vexatious litigator shall proceed as any other civil action, and the Ohio Rules of Civil Procedure apply to the action.
 (D) (1) If the person alleged to be a vexatious litigator is found to be a vexatious litigator, subject to division (D)(2) of this section, the court of common pleas may enter an order prohibiting the vexatious litigator from doing one or more of the following without first obtaining the leave of that court to proceed: (a) Instituting legal proceedings in the court of claims or in a court of common pleas, municipal court, or county court; (b) Continuing any legal proceedings that the vexatious litigator had instituted in the court of claims or in a court of common pleas, municipal court, or county court prior to the entry of the order; (c) Making any application, other than an application for leave to proceed under division (F) of this section, in any legal proceedings instituted by the vexatious litigator or another person in the court of claims or in a court of common pleas, municipal court, or county court.
 (2) If the court of common pleas finds a person who is authorized to practice law in the courts of this state under the Ohio Supreme Court Rules for the Government of the Bar of Ohio to be a vexatious litigator and enters an order described in division (D)(1) of this section in connection with that finding, the order shall apply to the person only insofar as the person would seek to institute proceedings described in division (D)(1)(a) of this section on a pro se basis, continue proceedings described in division (D)(1)(b) of this section on a pro se basis, or make an application described in division (D)(1)(c) of this section on a pro se basis. The order shall not apply to the person insofar as the person represents one or more other persons in the person's capacity as a licensed and registered attorney in a civil or criminal action or proceeding or other matter in a court of common pleas, municipal court, or county court or in the court of claims. Division (D)(2) of this section does not affect any remedy that is available to a court or an adversely affected party under section 2323.51 or another section of the Revised Code, under Civil Rule 11 or another provision of the Ohio Rules of Civil Procedure, or under the common law of this state as a result of frivolous conduct or other inappropriate conduct by an attorney who represents one or more clients in connection with a civil or criminal action or proceeding or other matter in a court of common pleas, municipal court, or county court or in the court of claims.
 (E) An order that is entered under division (D)(1) of this section shall remain in force indefinitely unless the order provides for its expiration after a specified period of time.
 (F) A court of common pleas that entered an order under division (D)(1) of this section shall not grant a person found to be a vexatious litigator leave for the institution or continuance of, or the making of an application in, legal proceedings in the court of claims or in a court of common pleas, municipal court, or county court unless the court of common pleas that entered that order is satisfied that the proceedings or application are not an abuse of process of the court in question and that there are reasonable grounds for the proceedings or application. If a person who has been found to be a vexatious litigator under this section requests the court of common pleas that entered an order under division (D)(1) of this section to grant the person leave to proceed as described in this division, the period of time commencing with the filing with that court of an application for the issuance of an order granting leave to proceed and ending with the issuance of an order of that nature shall not be computed as a part of an applicable period of limitations within which the legal proceedings or application involved generally must be instituted or made.
 (G) During the period of time that the order entered under division (D)(1) of this section is in force, no appeal by the person who is the subject of that order shall lie from a decision of the court of common pleas under division (F) of this section that denies that person leave for the institution or continuance of, or the making of an application in, legal proceedings in the court of claims or in a court of common pleas, municipal court, or county court.
 (H) The clerk of the court of common pleas that enters an order under division (D)(1) of this section shall send a certified copy of the order to the supreme court for publication in a manner that the supreme court determines is appropriate and that will facilitate the clerk of the court of claims and a clerk of a court of common pleas, municipal court, or county court in refusing to accept pleadings or other papers submitted for filing by persons who have been found to be a vexatious litigator under this section and who have failed to obtain leave to proceed under this section.
 (I) Whenever it appears by suggestion of the parties or otherwise that a person found to be a vexatious litigator under this section has instituted, continued, or made an application in legal proceedings without obtaining leave to proceed from the appropriate court of common pleas to do so under division (F) of this section, the court in which the legal proceedings are pending shall dismiss the proceedings or application of the vexatious litigator.
Any constitutional analysis begins with the proposition that legislative enactments enjoy a strong presumption of constitutionality. See, e.g., State ex rel. Jackman v. Court ofCommon Pleas of Cuyahoga Cty. (1967), 9 Ohio St.2d 159, 405. It is not our duty to assess the wisdom of a statute but to determine whether it was enacted pursuant to the General Assembly's constitutional authority. See Primes v. Tyler (1975), 43 Ohio St.2d 195,198.
The procedure described in the vexatious litigator statute vests complete authority to determine the validity of virtually all of a person's statewide legal actions in one trial court, see R.C. 2323.52(F), and deprives that person of any right to appeal that court's determination. R.C. 2323.52(G). Exactly what constitutes "an abuse of process" is left unresolved by the statute, as is the question of what situations might constitute "reasonable grounds" for leave to proceed.
It is also apparent from the structure of the statute that the trial court is required to make its determination prior to, and hence without, any sort of fact finding process. Thus, trial courts are left with no legal or factual guidance in determining whether reasonable grounds to proceed have been established, and because no appeal is contemplated in the statute, there is no requirement that the trial court articulate upon the record whatever factual or legal grounds may have been the basis for its decision to deny leave to proceed. As a result, summary denial would apparently be proper under the statute solely based on the trial court's personal decision that the lawsuit is unreasonable, even if the facts alleged are true and the cause of action has merit.
In short, the statute allows a trial court to arbitrarily and summarily deny leave to proceed even in another jurisdiction upon a formally proper complaint that would ordinarily survive a motion to dismiss under Civ.R. 12(B)(6).
Additionally, a careful reading of the statute indicates that it directly affects a vexatious litigator's access to the courts, not merely his or her right of self-representation. Cf. Kondratv. Byron (1989), 63 Ohio App.3d 495, 498. The statute's definition of "vexatious litigator" apparently includes only those who are "representing or [have] represented self pro se in the civil action or actions [sic]." R.C. 2323.52(A)(3). However, once a person is deemed a vexatious litigator, he or she is prohibited from instituting new legal proceedings without leave of court, regardless of whether the vexatious litigator is represented by counsel. See R.C. 2323.52(D)(1). By its plain terms, the statute fails to exempt the situation where a person deemed to be a vexatious litigator retains counsel for a legitimate lawsuit.[3] The person in that situation remains subject to prefiling review under R.C. 2323.52(F).[4]
In sum, the statute authorizes one trial court to shut off a vexatious litigator's access to all other Ohio trial courts. While courts may certainly employ drastic measures, including prefiling orders,[5] to prevent frivolous litigation from overtaking their own dockets, we believe it is a far different matter to allow one Ohio trial court to arbitrarily prevent a litigant from pursuing any and all claims in all Ohio trial courts.
 Apart from the necessity of a case-by-case determination of poverty, frivolity or maliciousness, a court may impose conditions upon a litigant — even onerous conditions — so long as they assist the court in making such determinations, and so long as they are, taken together, not so burdensome as to deny the litigant meaningful access to the courts.
In Re Green (1981), 669 F.2d 779, 786; cf. Procup v. Strickland
(1986), 792 F.2d 1069, 1070-73.
In Central Ohio Transit Authority v. Timson (December 24, 1998), Franklin App. No. 98AP-509, unreported, 1998 WL 894817, the Tenth District Court of Appeals determined that the bulk of the vexatious litigator statute is constitutional under Art. I. Sec. 16. See id. at *5. However, that court did strike the provisions of the statute that preclude appeal. See id. at *6. We agree with the Tenth District's conclusion that R.C. 2323.52(G) is unconstitutional. However, for many of the same reasons we respectfully disagree with that court's conclusions regarding the remainder of the statute. For one thing, merely allowing appeal of a trial court's decisions under R.C. 2323.52(F) does not remedy the wholly vague and arbitrary nature of the underlying determination. On the contrary, it merely forces another equally vague and arbitrary determination to be made by the court of appeals, where in most cases the appellate "record" will consist of nothing more than a single pleading, quite possibly addressing a trial court, parties, and subject matter outside the jurisdiction of the district court of appeals purporting to review it. Moreover, we fail to see how a trial court's determination under R.C. 2323.52(F) could ever be deemed an abuse of the unfettered discretion the statute apparently conveys, assuming such a standard of review, which, of course, is entirely unestablished as well.
In concluding our analysis we believe some of the concerns raised by the dissent should also be addressed. The dissent contends that it is unnecessary to address the constitutionality of R.C. 2323.52 in this case because appellant waived the issue by consenting to the label and by failing to immediately appeal the trial court's June 1, 1998 judgment declaring him to be a vexatious litigator.[6]
We respectfully disagree. It is well established that in order to challenge the validity of a statute, the person challenging the statute generally must be able to demonstrate actual and direct injury. See generally State ex rel.Ohio Academyof Trial Lawyers v. Sheward (1999), 86 Ohio St.3d 451, 469-70. However, in this case any injury to appellant as a result of him being declared a vexatious litigator was merely theoretical until he was actually prevented from filing a lawsuit pursuant to R.C.2323.52(F). Cf., e.g., State v. Spikes (1998), 129 Ohio App.3d 142,145. Thus, the specific constitutional claim raised in this case was not ripe for appellate review until the trial court denied him leave to proceed. Moreover, inasmuch as R.C.2323.52(G) explicitly states that a trial court's denial of leave to proceed is not appealable, we do not believe the application of traditional principles of waiver and preservation of appellate review urged by the dissent can in good faith be held to govern our decision, even assuming those doctrines are not in fact obviated by the express statutory prohibition of any appeal.
The dissent also argues that R.C. 2323.52 is analogous to the statute approved by the Ohio Supreme Court in Conley v. Shearer
(1992), 64 Ohio St.3d 284. The statute discussed in that case required plaintiffs alleging malicious wrongdoing by a state employee to file a preliminary action in the Ohio Court of Claims to determine whether the employee was entitled to personal immunity and also whether the courts the courts of common pleas would have subject-matter jurisdiction over the claim alleged. However, in drawing its comparisons, the dissent overlooks several crucial differences between the statutes. First of all, unlike the trial court's decision on a motion for leave to proceed, the immunity decision occurs after a limited amount of discovery, "preferably on a motion for summary judgment." Roe v. HamiltonCty. Dept. of Human Serv. (1988), 53 Ohio App.3d 120, 126, quoted in Conley v. Shearer (1992), 64 Ohio St.3d 284, 292. The trial court therefore has some factual record upon which its decision may be based, in stark contrast to the procedure described in R.C.2323.52.
Furthermore, the statute approved in Conley did not restrict the right of plaintiffs to appeal a grant of immunity. Cf. id. at 286-87. Most importantly, we must point out that the statute approved in Conley affects only those actions filed by any plaintiff "against an officer or employee as defined in section109.36 of the Revised Code," whereas the vexatious litigator statute affects lawsuits filed against any defendant. In short, the immunity statute limited the capacity to be sued, not the capacity to sue. As a result, the statute approved in Conley had only a limited effect on a plaintiff's access to the courts.
Finally, the dissent argues that the statute does not restrict access to the federal courts, and would reverse the judgment of the trial court only insofar as it exceeds the scope of the statute in this respect. We agree with the dissent's construction of the statute on this issue, but we reject the suggestion that access to the federal courts is a "meaningful substitute" for access to Ohio's trial courts. It is also suggested that vexatious litigators may effectively challenge irrational decisions by the trial court through mandamus proceedings. Again, we would respectfully disagree, insofar as a mandamus action can only compel performance of specific duties which, for the reasons stated above, are entirely undefined and unreviewable under this statutory scheme. As we have observed regarding direct appeals, "[m]erely allowing appeal of a trial court's decisions under R.C. 2323.52(F) does not remedy the essentially arbitrary nature of the underlying determination. * * * [I]t merely forces another equally arbitrary determination to be made by the court of appeals." Supra, at *12-13. We believe this argument applies with equal force to the filing of original actions in Ohio's appellate courts.
In conclusion, we can easily concur with the dissent insofar as Lonny Lee Bristow appears to be exactly the type of litigant to whom R.C. 2323.52 was directed. However, unlike the dissent, we do not believe that this fact alone supersedes all other considerations in evaluating the fundamental constitutional inadequacies of the statute.
For the foregoing reasons, we now hold that the procedure established by R.C. 2323.52, the vexatious litigator statute, fails to provide a reasonable and meaningful substitute for direct access to Ohio's trial courts. We therefore determine that the statute is unconstitutional in its entirety as violative of Ohio Const. Art. I Sec. 16. To the extent this places our decision in conflict with the decision of the Tenth District Court of Appeals in Central Ohio Transit Authority v. Timson (December 24, 1998), Franklin App. No. 98AP-509, unreported, 1998 WL 894817, and with the First District Court of Appeals decision Deters v. Briggs
(December 31, 1998), Hamilton App. No C-971033, unreported, 1998 WL 906405, discretionary appeal not allowed (1999) 85 Ohio St.3d 1460, No. 99-152, we acknowledge the conflicts and certify the same to the Ohio Supreme Court pursuant to Oh. Const. Art. IV Sec. 3(B)(4).[7]
Despite our holding today, we recognize that trial courts should have and indeed do have broad inherent authority to protect their own dockets and the integrity of their own judicial processes. Cf. In Re Martin-Trigona (1984), 737 F.2d 1254, 1261. The Crawford County Court of Common Pleas has such authority to institute pre-filing review procedures as to appellant's filings in that court. See State ex rel. Richard v. Cuyahoga Cty. Bd. OfComm. (1995), 100 Ohio App.3d 592. Moreover, insofar as the trial court's order prevents appellant from sending letters to persons who have requested not to receive mail from him, it is clearly authorized by Ohio Adm. Code 5120-9-18.
Accordingly, the trial court's order dated August 20, 1998 is sustained only to the extent that it affects those limited concerns. In all other respects, appellant's sole assignment of error is sustained, and the judgment of the Crawford County Court of Common Pleas is reversed.
Judgment affirmed in part and reversed in part.
BRYANT, P.J., concurs.
[1] Appellant argues that insofar as the procedure established restricts his access to courts other than the Crawford County Court of Common Pleas, it results in a denial of his right of access and right to a remedy under the Ohio Constitution. In support of his argument appellant cites Ohio Adm. Code 5120-9-18, which vests control over mail restrictions in the Department of Rehabilitation and Corrections. Appellant contends that the trial court lacked authority to order any restrictions beyond that authorized under the Ohio Administrative Code. Specifically, appellant argues that the trial court could not order appellant's legal mail be forwarded to that court rather than the address appellant had intended to send it to. However, because the rights of prisoners to the courts are limited beyond those of other citizens, see, e.g., Bounds v. Smith (1977), 430 U.S. 817, we perceive no legally significant difference between the procedure contemplated under R.C. 2323.52 and that outlined in the trial court's implementation order dated August 20, 1998.
[2] In papers filed outside the record in this case, appellant has alleged that the trial court has prevented him from proceeding in states other than Ohio. The trial court justifies this action by stating that "[a]lthough several courts in Ohio now refuse his pauper pleadings and he has been declared a vexatious litigator in Ohio, Bristow has pledged to, and now is filing his frivolous actions across the United States and in foreign countries." (Judgment Entry dated August 20, 1998, at *3). As the dissent quite correctly notes, this certainly appears to be the case. Nevertheless, we believe that basic principles of federalism and sovereignty prohibit the trial court from relying upon an Ohio statute to impede appellant's actions in any courts other than Ohio's own.
[3] The statute does purport to exempt from R.C. 2323.52(F) attorneys deemed to be "vexatious litigators" but who are acting in a representative capacity. See R.C. 2323.52(D)(1).
[4] In Kondrat v. Byron (1989), 63 Ohio App.3d 495, 498, the Lake County Court of Appeals reviewed the validity of an injunction restricting the appellant's ability to file pleadings in that county, and noted the significant distinction between self-representation and access to the courts:
 "We note that only his right of self-representation is being denied, not his right of access to the courts; Mr. Barday is still free to proceed through an attorney of his choice, and he is still free to appear `pro se' in his own `defense.' Thus, this injunction works no infringement on respondent's constitutional rights."
 Id., quoting Bd. of Cty. Commrs. v. Barday (1979), 197 Colo. 519, 522; 594 P.2d 1057, 1059 (emphasis added). We believe it to be self-evident that the injunction at issue in Kondrat is distinguishable from the procedure intended under R.C. 2323.52.
[5] In 1990, California enacted a statute prohibiting persons deemed to be vexatious litigants from filing any new litigation without obtaining leave of the presiding judge of the court where the litigation is to be filed. See Cal. Code Civ. Proc. 391.7, cited in Central Ohio Transit Authority v. Timson (December 24, 1998), Franklin App. No. 98AP-509, unreported, 1998 WL 894817 at *4. The California statute is substantially different than the one adopted by the Ohio legislature, in part because the two statutes utilize different standards. Under the California statute, filing is mandatory "if it appears that the litigation has merit and has not been filed for the purposes of harassment or delay." Cal. Code Civ. Proc. 391.7(b). Perhaps the more significant distinction, however, is the fact that under California's rule the prefiling determination is made by a judge in the court where the filing is to occur, rather than by a trial court that may or may not have any relationship to the litigation. Notably, California's procedure survived a challenge under a provision of that state's constitution analogous to Oh. Const. Art. I Sec. 16. See Wolfgram v. Wells Fargo Bank (Cal.App. 1997),53 Cal.App.4th 43, 61 Cal.Rptr.2d 694.
[6] As the dissent observes, appellant apparently admitted to being a vexatious litigator in exchange for a plea bargain in an unrelated criminal case. While we believe such an arrangement to be highly questionable, the dissent is quite correct in pointing out that no appeal was taken from this judgment.
[7] In Deters, the Hamilton County Court of Appeals held that R.C. 2323.52 did not violate Section 16, Article I of the Ohio Constitution, and in Timson, the Franklin County Court of Appeals held that only subsection (G) of the statute is violative of the Constitutional provision.