**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


S.U.,
**Plaintiff Below, Petitioner**

**vs.) No. 20-1006** (Harrison County 19-C-275-2)

**Central Atlantic Legal Group, PLLC,**
**dba Booth, Strange & Daniel, and J.S.,**
**Defendants Below, Respondents**


**MEMORANDUM DECISION**


Self-represented petitioner S.U.[1] appeals the Circuit Court of Harrison County's November 16, 2020, order that, in relevant part, granted respondents' motions for summary judgment and their counterclaim to have petitioner designated as a vexatious litigant. Respondents Central Atlantic Legal Group, PLLC, dba Booth, Strange & Daniel, and J.S., by counsel Daniel T. Booth, filed a response in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner alleges that the litigation privilege should not extend to sexual exploitation, sexual harassment, and/or malicious claims of incest, and that the standard for a finding of vexatious litigation was not met.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

This Court has previously issued detailed memorandum decisions concerning petitioner's attempts to divest his children's mother of her custody of their children and even her status as the children's mother. *See S.U. v. C.J.* ("*S.U. I*"), No. 18-0566, 2019 WL 5692550 (W. Va. Nov. 4,

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

2019)(memorandum decision); *S.U. v. C.J.* ("*S.U. II*"), No. 19-1181, 2021 WL 365824 (W. Va. Feb. 2, 2021)(memorandum decision); *In re Adoption of E.U., L.U.-1, and L.U.-2*, No. 20-0039, 2021 WL 4935772 (W. Va. Oct. 13, 2021)(memorandum decision); *In re The Children of: S.U. v. C.J.*, No. 20-0515, 20-0516, 20-0612, and 20-0710, 2021 WL 4936476 (W. Va. Oct. 13, 2021)(memorandum decision). Because of the limited arguments on appeal in the matter currently before the Court, it is unnecessary to belabor these facts. Instead, it is sufficient to stress that petitioner has repeatedly advanced factual theories that have no basis in the record in his numerous attempts to undermine the children's mother's relationship with their children.

This appeal arises from proceedings in which petitioner filed a civil complaint against Central Atlantic Legal Group, PLLC, and J.S., a member of that firm and the attorney who represented petitioner's children's mother in the proceedings from *S.U. I*. Specifically, in October of 2019, petitioner filed a complaint against respondents in which he alleged malicious use of process, defamation per se, harassment, fraud, and intentional and reckless infliction of emotional distress arising from J.S.'s representation of the mother. As in all of petitioner's proceedings before this Court, he claimed that the mother had no legal claim to the children because of the alleged existence of a gestational surrogacy contract, a contract this Court has found to be unenforceable. *S.U. I*, No. 18-0566, 2019 WL 5692550, at *4 (finding that "all of [petitioner's assignments of error] . . . [w]ere grounded on his contention that [respondent] was nothing more than a gestational surrogate for the parties' three youngest children" and declining to disturb the family court's resolution of this issue in respondent's favor). Based on this assertion, petitioner alleged in his complaint that respondent J.S. made fraudulent representations to various courts in furtherance of his representation of the mother. Petitioner also alleged that respondent J.S. harassed him and, in fact, physically pushed and threatened him after a hearing. Petitioner also claimed that respondent J.S. extensively and maliciously attempted to demean him in regard to his gender. Relevant to this issue, we previously noted that petitioner "was listed as a female on his birth certificate," although he "testified that he was not a binary male or female at birth, although he has always considered himself to be male." *S.U. I*, No. 18-0566, 2019 WL 5692550, at *1.

Respondents filed an answer that, in relevant part, asserted litigation privilege as an affirmative defense to petitioner's causes of action. Respondents also asserted counterclaims for malicious prosecution, abuse of process, and declaratory judgment. According to respondents, petitioner filed this civil action "in an attempt to collaterally attack and set aside the West Virginia Supreme Court's decision" in *S.U. I* and to increase the mother's litigation costs and expenses in an effort to force her to abandon her efforts to maintain custody of the children. Respondents also alleged that petitioner sought to force J.S. to withdraw from his representation of the mother, leaving her without representation to protect her interests and those of her children. Respondents cited petitioner's past motions seeking J.S.'s withdrawal as evidence. Respondents further asserted that petitioner's filing was with malice and without probable cause, as this Court's affirmation of the lower courts in *S.U. I* demonstrated the mother's entitlement to custody of her children. Respondents concluded by asserting that petitioner "demonstrated actual malice by a sinister and corrupt motive such as hatred, personal spite, desire to injure [respondents] and their client . . . , and a conscious disregard for the rights of [the mother] and her counsel."

Thereafter, respondents moved for summary judgment on all of petitioner's claims and their counterclaims. By order entered on November 16, 2020, the circuit court ruled on several

outstanding filings. Relevant to this appeal, the court granted all of respondents' motions for summary judgment. The court also declared petitioner a vexatious litigant and enjoined him from filing any further self-represented filings before the court.

In reaching this ruling, the court addressed all of petitioner's enumerated claims, as set forth in his complaint. The court noted that petitioner's claim for "Malicious Use of Process" would be treated, because of petitioner's self-represented status, as both a claim for malicious prosecution and abuse of process. In regard to petitioner's responsive pleadings to respondents' motion for partial summary judgment on the claim of "Malicious Use of Process," the court noted that they were "entirely devoid of legal authority" and "essentially offer[] little more than what amounts to bald averments, conclusory statements, and self-serving opinions, insufficiently supported legal argument thereon." The court also noted that petitioner failed to provide any supportive documents or other evidence of record, or any controlling legal authority establishing the necessary elements for either a claim of malicious prosecution or abuse of process. Importantly, the court found that petitioner could not meet the standard for malicious prosecution by respondents because the civil actions in question were initiated by petitioner and respondents merely defended against them. Further, the actions ended unfavorably to his position. Accordingly, the court found that petitioner's cause of action could not survive respondents' motion for summary judgment as a matter of law because petitioner had not demonstrated any genuine issue of material fact thereon.

In regard to petitioner's fraud claim, the court found that petitioner could not establish through the evidentiary record that he relied, to his detriment or otherwise, upon any allegations or pleadings made by respondents on their client's behalf. Rather, the record showed that petitioner "vigorously contested such through trial and on appeal." The court further found that petitioner's "fraudulent claims upon the court against [respondents] in prior court proceedings were asserted and argued by him during those prior proceedings wherein he did not prevail at trial or on appeal." According to the court, nothing in the developed record supported any potential claim of fraudulent concealment let alone created any genuine issue of material fact sufficient to survive summary judgment. Again, the court found that petitioner failed to provide any substantive evidence in opposing summary judgment as to this count.

As to petitioner's claim of intentional and reckless infliction of emotional distress, the court found that "nothing in the developed record herein supports any potential claim of intentional and reckless infliction of emotional distress let alone create[s] any genuine issue of material fact enough to survive summary judgment." The court then found that no cause of action for "harassment" exists, and petitioner failed to state a legitimate claim upon which relief could be granted. However, the court found that the specific allegations contained therein would nonetheless fall under his claim for intentional and reckless infliction of emotional distress, which lacked a basis in the evidence and was already found to be ripe for summary judgment.

The court then turned to petitioner's claim of defamation per se and found that all the statements "were made in the course of court proceedings in an attempt to uncover the actual parentage of the child involved in *pro se* [petitioner's] custody battle with [respondents'] client and serve as critical inquiry for credibility determinations by that court." Further, the court found that "any purportedly defamatory statements made to *pro se* [petitioner] by [respondents], as

asserted in his pleadings, were made directly to him; and not to any third party or otherwise published." As such, the court found that petitioner failed to establish all the essential elements for his defamation claim as a matter of law.

More generally, the court found that in resisting a motion for summary judgment, petitioner "cannot rest upon the mere allegations or denials of [respondent's] pleadings." Instead, the court ruled that petitioner was required to produce pertinent facts to demonstrate necessary trial-worthy issues for his claims. Petitioner provided a document titled "Affidavit," but the court found that "this self-serving document is not notarized, was not properly taken under oath[, and] is accordingly deemed insufficient for purposes of countering" respondents' affidavit. The court further noted that petitioner's responsive pleadings to respondents' summary judgment motions "fail to address many of the legal issues set forth therein which are dispositive of the legal issues at hand." As such, the court deemed that petitioner conceded those legal issues.

The court next addressed respondent's counterclaims and, specifically, the request for judgment declaring petitioner a vexatious litigant. In ruling on this issue, the court noted the "totality of prior proceedings" in which respondents represented petitioner's children's mother, which were documented in the record and of which the court took judicial notice. The court found that petitioner demonstrated a "persistence to file multiple actions in various court venues all of which essentially being in an effort to continue asserting (directly and/or peripherally) his alleged parental rights in contravention of all previous determinations." The court further found that there was no genuine issue of material fact as to the totality of petitioner's prior actions before multiple courts and the unsuccessful results thereof, in addition to the fact that he was the subject of multiple contempt and injunctive rulings as a result of these filings. The court concluded that it was indisputable that petitioner's complaint "completely fails as a result of the proper application of such 'litigation privilege' *and there otherwise being no sufficient evidentiary proffer supporting any cause of action asserted by him to withstand summary judgment as a matter of law*." (Emphasis added). The court stressed that the evidentiary record "reflects an unfounded civil action . . . that lacks viable legal support and further demonstrates his ulterior and improper purposes in attacking such counsel" and that petitioner clearly demonstrated an intention to obstruct the administration of justice. Accordingly, the court found that petitioner should be prevented from misusing the court system in Harrison County and specifically as to respondents via any further legal pleadings. The court then directed that before attempting to file any pleadings against these specific respondents, petitioner was required to seek the review and approval of the Chief Judge of the Circuit Court of Harrison County and that any pleadings filed without such approval would be refused or, if filed, stricken. It is from this order that petitioner appeals.

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). We note, however, that de novo review of the court's order in this case is inappropriate because petitioner has failed to challenge the circuit court's detailed findings regarding the appropriateness of summary judgments and has, instead, presented a narrow legal issue that not only misrepresents the record but also would avail him of no relief even if the Court were to accept his position, which we do not. On appeal, petitioner's first assignment of error is presented as follows: "Litigation privilege should not apply to sexual exploitation, sexual harassment, and/or malicious claims of incest." As such, it is clear that petitioner is challenging *only* the circuit court's application of the litigation privilege to his claims,

4

while completely ignoring the fact that the court also found that there were no genuine issues of material fact in regard to any of petitioner's counts as set forth in his complaint such that it could survive summary judgment. In fact, after respondents noted in their brief to this Court that the circuit court did not grant summary judgment on the litigation privilege alone, petitioner redoubled his focus on this narrow issue in his reply brief, arguing that the court's final order shows that petitioner's "action was entirely summarily dismissed due to litigation privilege." As support for this assertion petitioner points to the following finding from the order on appeal:

> As otherwise fully reviewed and pronounced herein, there is no genuine issue of material fact that *pro se* [p]etitioner's [c]omplaint completely fails as a result of the proper application of such 'litigation privilege' and there otherwise being no sufficient evidentiary proffer supporting any cause of action asserted by him to withstand summary judgment as a matter of law.

Petitioner emphasizes the first portion of this finding concerning the litigation privilege while totally ignoring the fact that the court *also* found that the evidence to support petitioner's claims was entirely lacking and resulted in there being no genuine issue of material fact to present to a jury. Petitioner even succinctly sums up his understanding of this quoted language as follows: "Said another way, it was due only to the lower court's application of litigation privilege that [petitioner's] case was dismissed via summary judgment." As is abundantly clear from the record, this is a misrepresentation of the circuit court's ruling and an interpretation that is fatal to petitioner's appeal.

> As we have explained,

>> [i]f the moving party makes a properly supported motion for summary judgment and can show by affirmative evidence that there is no genuine issue of a material fact, the burden of production shifts to the nonmoving party who must either (1) rehabilitate the evidence attacked by the moving party, (2) produce additional evidence showing the existence of a genuine issue for trial, or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f) of the West Virginia Rules of Civil Procedure.

Syl. Pt. 3, *Williams v. Precision Coil, Inc.*, 194 W. Va. 52, 56, 459 S.E.2d 329, 333 (1995). As set forth above, the court made detailed findings about petitioner's failure to meet these burdens, including the fact that the document petitioner filed entitled "affidavit" did not meet any of the requirements for such a filing. On appeal, petitioner fails to challenge any of these findings, instead opting to argue that litigation privilege should not apply to respondent's conduct. This is simply insufficient to entitle him to relief, and we decline to undertake a detailed review of this matter when petitioner has abdicated his burden of establishing reversible error. This is in keeping with our explicit warning that "'[a]ssignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived.' Syl. Pt. 6, *Addair v. Bryant*, 168 W. Va. 306, 284 S.E.2d 374 (1981)." Syl. Pt. 7, *Birchfield v Zen's Development, LLC*, 245 W. Va. 82, 857 S.E.2d 422 (2021).

Finally, petitioner argues that the circuit court erred in finding that he was a vexatious litigator. However, this argument is again disingenuous and misrepresents petitioner's extended history of multiple filings seeking to relitigate and collaterally attack the result of the cause of action that gave rise to *S.U. I*. In his brief, petitioner alleges that he "filed a single complaint that made a good faith argument for the application, extension, modification or reversal of existing law to stop [r]espondent's ongoing harassment, abuse, defamation, and malicious acts." This is wildly inaccurate, as the record in this matter and the many related appeals before the Court demonstrate that, as the circuit court found, petitioner has demonstrated a pattern of filing multiple pleadings in various venues in order to continue his attack against the legal rights of his children's mother. Indeed, the order on appeal was explicit that

> The majority of *pro se* [petitioner's] pleadings herein clearly demonstrate yet another attempt to somehow: (a) re-litigate the issues previously determined by prior proceedings in the Family Court of Mason County, West Virginia [*S.U. I*]; (b) adversely impact [the children's mother] therein and; (c) otherwise improperly burden her legal counsel with little more than bald accusations and litigation ultimately concluded herein to be speculative and unsupported by any developed evidentiary record.

That this is the lone complaint he has filed against *these specific respondents* is not remotely indicative of petitioner's history of harassment against the children's mother, which has now extended to her legal representation. In fact, this is not the first instance in which petitioner has been found to have engaged in harassing behavior toward the mother's counsel. We previously noted that petitioner was found in contempt multiple times, including for his having increased the mother's litigation costs by faxing to her counsel "almost all of [his] pleadings 'and countless other documents,' despite a prior order prohibiting him from doing so." *In re The Children of: S.U. v. C.J.*, No. 20-0515, 20-0516, 20-0612, and 20-0710, 2021 WL 4936476, at *2. What the record in this matter and all of petitioner's related appeals demonstrates is that petitioner has a willful disregard for orders of courts and the legitimacy of their rulings that has now manifested in his attempt to hold counsel for the children's mother civilly liable for defending her against his vexatious pleadings.

It is telling that this is now the second appeal before this Court in which petitioner has challenged a restriction on his ability to file additional pleadings. We addressed this exact issue in *In re The Children of: S.U. v. C.J.* In that case, the circuit court required that petitioner pay a bond and/or retain an attorney before he could file additional pleadings. *Id.* In addressing petitioner's challenge to this ruling, we noted the following:

> Free access to courts is a principle predicated on the erroneous assumption that both litigants in all lawsuits have a good faith dispute. Often this is not the case, and where it is not, the mischief must be discouraged. Courts are available free of charge, so they are overused. Their overuse in turn congests the docket, resulting in justice-defying delays. In a court system burdened, even compromised, by congestion and delay we need to be particularly sensitive to mischievous overuse of the courts. Litigation designed simply to impede a party seeking payment of an obligation, spiteful and vexatious suits—these simply do not belong in court. . . .

Everyone who has a good faith dispute requiring a decision by an impartial arbiter is entitled to his day in court. On the other hand, every person is not entitled to his day in court regardless of the frivolous nature of the suit. Parties whose interest in the legal process is to oppress or cheat others should be discouraged.

*Mark V.H. v. Delores J.M.,* No. 18-0230, 2019 WL 4257183 at *13 (W. Va. Sept. 9, 2019)(memorandum decision) (quoting *Nelson v. W. Va. Pub. Emp. Ins. Bd.*, 171 W. Va. 445, 453-54, 300 S.E.2d 86, 95 (1982)); s*ee also, Mathena v. Haines*, 219 W. Va. 417, 422, 633 S.E.2d 771, 776 (2006) ("While access to courts is a recognized fundamental right, it is also a commonly recognized principle that such right of access is not without limitations."); *State ex rel. James v. Hun*, 201 W. Va. 139, 141, 494 S.E.2d 503, 505 (1997) (The "right of meaningful access to the courts is not completely unfettered.").

We also pointed out that this is the case in many other jurisdictions:

Numerous states have adopted statutes or rules that permit restrictions on litigants who have been determined to be vexatious—that is, "persons who persistently and habitually file lawsuits without reasonable grounds, or who otherwise engage in frivolous conduct in the courts." Robin Miller, "Validity, Construction, and Application of State Vexatious Litigant Statutes," 45 A.L.R.6th 493 (2009). While this Court has not adopted a vexatious litigant rule, other courts routinely levy sanctions or fashion remedies to preclude the filing of frivolous and repetitious proceedings. *See, e.g., In re Vey*, 520 U.S. 303, 304 (1997) (precluding Supreme Court Clerk from accepting further in forma pauperis filings "[i]n light of [pro se petitioner's] history of frivolous, repetitive filings[.]"); *Washington v. Alaimo*, 934 F. Supp. 1395, 1397 (S.D. Ga. 1996) (pro se litigant's access to courts could be limited because he "lacks the ability or will to govern his suits with the civility and order required by . . . the Federal Rules of Civil Procedure. He has wasted the time of many an innocent party and he has flippantly used the resources of the judiciary with his abusive motions filing practice."); *Rudnicki v. McCormack*, 210 F. Supp. 905, 909 (D.R.I. 1962) ("I have determined that the time has come when it is necessary and appropriate that an injunction issue, both for protection of these and other public officials against unwarranted harassment, and for the protection of the records of this and other courts against the filing of frivolous and unimportant papers."); *In re Prefiling Order Declaring Vexatious Litigant, Pursuant to I.C.A.R. 59*, 164 Idaho 586, 434 P.3d 190 (2019) (upholding restrictions on litigant who filed numerous frivolous pro se actions and frivolous pleadings); *DeNardo v. Cutler*, 167 P.3d 674, 681 (Alaska 2007) ("[T]he courts have the authority to enjoin persons engaged in the manifest abuse of the judicial process . . . . The courts may take creative actions to discourage hyperactive litigators so long as some access to courts is allowed, such as by limiting the amount of filings a litigant may make, and prescribing conditions precedent to those filings so as to determine the propriety of a suit on a case by case basis." (Quoting 42 Am.Jur.2d Injunctions § 191 (electronic edition, updated May 2006)); *Kondrat v. Byron*, 63 Ohio App. 3d 495, 496, 579 N.E.2d 287, 287 (1989) (permanently enjoining litigant from filing future pro se

7

cases without first meeting stringent conditions); *Eismann v. Miller*, 101 Idaho 692, 697, 619 P.2d 1145, 1150 (1980) (Exercise of the right to access to the courts "cannot be allowed to rise to the level of abuse, impeding the normal and essential functioning of the judicial process. To allow one individual, untrained in the law, to incessantly seek a forum for his views both legal and secular by means of pro se litigation against virtually every public official or private citizen who disagrees with him only serves to debilitate the entire system of justice."); *Bd. of Cty. Comm'rs of Boulder Cty. v. Barday*, 197 Colo. 519, 522, 594 P.2d 1057, 1059 (1979) ("[T]he right of access to courts does not include the right to impede the normal functioning of judicial processes. Nor does it include the right to abuse judicial processes in order to harass others.").

*Mark V.H.*, 2019 WL 4257183 at *14. In upholding the Court's restrictions on petitioner's ability to file additional pleadings in that prior appeal, we noted that

> petitioner continues to file numerous pleadings against [the children's mother] in an attempt to divest her of her parental rights to the children—an issue that this Court squarely resolved in *S.U. I*. Moreover, petitioner has demonstrated a willful refusal to follow the family court's basic directions and, as a result, has been held in contempt at least six times. This includes petitioner's refusal to cease faxing voluminous documents to [the mother]'s counsel and other conduct that has unnecessarily increased [her] legal fees. As such, we find no error in the family court placing reasonable restrictions on petitioner's ability to file pleadings or other self-represented documents.

*In re The Children of: S.U. v. C.J.*, No. 20-0515, 20-0516, 20-0612, and 20-0710, 2021 WL 4936476, at *6. The facts of this case demonstrate that petitioner has not only failed to correct his vexatious conduct but has, in fact, extended it to target individuals who assisted the mother in her efforts to exercise custody of her children. Because the court made extensive findings about petitioner's bad faith and vexatious conduct, we find no error in the reasonable restrictions placed on his ability to file self-represented pleadings against respondents herein without prior approval.

Lastly, we find it necessary to remand this matter to the circuit court for the limited purpose of holding a hearing to determine if awarding respondents attorney's fees and costs is appropriate.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 16, 2020, order is hereby affirmed and the matter remanded, with instructions.

Affirmed and remanded.

**ISSUED**: February 1, 2022

**CONCURRED IN BY**:

8

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice William R. Wooton